Catron, Ch. J.
delivered the opinion of the court.
Parks and Campbell ’purchased of Howard one thousand two hundred and thirty-six pounds of seed cotton, at one dollar fifty cents per hundred, and paid him in cash and merchandize, and a previous account, immediately for the cotton. The purchase was made in the usual course of dealing, without any knowledge on the part of the purchasers that H. was a renter, or indebted for the rent, or that the cotton had been raised on rented premises. Davis had rented the premises to Howard on which the cotton was grown, and H. owed the rent for that *259 year. Davis obtained mdgment against Howard for the rent, and then sued Parks and Campbell belore two justices, for the value of the cotton, by force of the act of 1825, ch. 21. The circuit court held the action would lie.
1st. Was it intended by"the act of 1825 to vest in the landlord a legal title to the crop grown on the premises, and cut off all power in the tenant to sell and convey a legal title to the purchaser of any part of it, as against the landlord.
2d. Was it the intention of the legislature to subject to suit on behalf of the landlord, every person who fairly and innocently purchased any part of the crop, or obtained it for toll, or in barter. If so, the miller and the gin holder, who grind and pick for toll — the neighboring woman who borrows a little meal or cotton, or a few potatoes — is subject to be sued in trover, and to be harrass-ed by the constable. From the ripening of the crop to the first of January, when the rent falls due, the subject of twenty petty lawsuits may exist. The legislature could not have intended to let in these multiplied mis-chiefs. Furthermore: the tenant generally is so poor as to be dependant on his crop to feed and clothe his family, and will not have the power to sell, if the purchaser can only take a title at the landlord’s mercy. Here is a good instance; cotton spinners and weavers purchased, and furnished clothing for the renter’s-family, on the 18th December, (the coming in of the winter;) in February following they were sued by the landlord.— Did the legislature intend the family should go without clothes? It cannot be that the act intended to afflict the most destitute families in this country with nakedness, and drive them from the mill and the gin. The proviso to the act informs us what kind of lien on the crop was intended. It was a lien to be enforced by judgment and execution against the tenant, by the landlord, and not by suit against purchasers from the tenant. The landlord *260 may levv his execution on the crop, growing or made; which execution shall have precedence over all other judgments and executions against the crop, for three months after the rent falls due, and until any suit for the rent against the tenant is decided, if it be brought within the ninety days. So, if the tenant underlets, the sub - tenant’s crop is liable for the first landlord’s rent. Priority of satisfaction, in cases of contending executions, was intended to be provided for. To go the length insisted on is oppressive on the poor, and, to say the least of it, very questionable policy. The judgment will be reversed, and the defendant go hence. It is useless to remand the cause for another trial. The warrant commands Paries and Campbell to appear to answer Elisha Davis “in a plea of trespass on the case under fifty dollars.” Had the warrant set out, that it was for one thousand two hundred and thirty-six pounds of cotton, converted to their use, 'purchased from John Howard, the tenant of said Davis, on which he had a lien for rent, then we would arrest the judgment, because'no action lay for the cotton. But as no cause of action is set out in the warrant, which is in fact an action of trover, we must arrest the judgment for this defect, as we did at Sparta, last term, where trover for a colt was brought before two justices, and the same language was used on the face of the warrant. This case shews the necessity of requiring a substantial but brief description of the cause of action, in cases brought before two justices. Had it been stated, much cost would have been prevented in this instance.
Judgment reversed.